Case number 12-1364, Petaluma FX Partners, LLC, Ronald Scott Vanderbeek, a partner other than the Tax Matters Partner versus Commissioner of the Internal Revenue Service. Ms. Oppenheimer for the appellant, Mr. Robbins for the appellee. Ms. Oppenheimer, good morning. Joan Oppenheimer, good morning, for the Commissioner. This is now the third appeal in this case, and it's the second set of briefs in this case. After Woods was decided, the government filed a motion for summary reversal, and Petaluma didn't really object to that. They simply wrote a one-paragraph response saying they agree that Woods is controlling and they don't agree that it requires the resolution, the reinstatement of the tax court's decision, which is otherwise replete with faulty analysis and erroneous legal conclusions, but they never specified what they were. So essentially they agreed with us that Petaluma, that Woods' decision is controlling, and now since new briefs were ordered, they have come up with two arguments that were not in either of their briefs in the prior two appeals or in the original briefs in this case. It's our position that their first argument, namely a jurisdictional challenge to a regulation inspired by the law of the case, and that their second argument, a challenge to validity of a regulation on the gross valuation misstatement penalty, that they waived that argument by failing to raise it below. So can I ask you a framing question first? So for the second argument you say waiver, but the first argument you say law of the case. Correct. I take it the reason you don't say waiver as to the first argument, because it too wasn't raised, is that you believe that the validity of the regulation goes to jurisdiction. I believe that the validity of the regulation under 6233 does go to jurisdiction. I don't believe that the validity of the regulation under 6262 goes to jurisdiction. So that's why we're talking about law of the case for the first regulation So why does that first regulation go to jurisdiction? And here's my question in particular. As I read Woods, and as I read the government's argument to the Supreme Court in Woods, jurisdiction came from 6226F. Period. Correct. 6233 doesn't have anything to do with jurisdiction over the determination of sham partnership or the applicability of the penalty. And if 6233, as I read Woods, and as I read the statute, this would be the argument I think, doesn't have anything to do with jurisdiction, then the regulation doesn't have anything to do with jurisdiction either. And if the regulation doesn't have anything to do with jurisdiction because jurisdiction already existed by virtue of 6226F, then the argument as to the rank has been waived. Well, your argument would make my case a lot easier. 6233 basically adopts the provisions of TEFRA in the case of a sham partnership. In other words, the question 6233 addresses is, so what rules apply if a partnership return is filed and it's determined that, in fact, there's no partnership? Well, then the statute says that TEFRA applies to the extent the commissioner's regulations so provide, but one of the provisions of TEFRA is 6226F, which is a jurisdictional provision. I guess I understand that, but when you look at what the government argued to the Supreme Court in Woods, which was a sham partnership case, obviously. Correct. 6233 is not even in the field of vision, nor is the regulation. And the Supreme Court never mentions 6233 in talking about jurisdiction. And the reason, I think, is because the argument we've made. If you look at 6226F, it already tells you that there's jurisdiction as to a couple things. One is the determination of whether it's a sham partnership because that's a partnership item. And the second is the applicability of the penalties because the applicability of the penalties relate to an adjustment to a partnership item, namely the adjustment being that this is actually a sham partnership. And once you have that, you don't even look to 6233 or any regulations. Those might matter for other things that ensue from a determination of sham partnership, but just on the question of whether there's subject matter jurisdiction, 6226F already gets you all the way home. And the Supreme Court's decision in Woods and the government's Supreme Court brief in Woods seem to support that line of thinking. Well, I mean, that makes my case a lot easier. You must have thought that there was a problem with that because you didn't make the argument. I'm just... I don't know how you get to jurisdiction over jurisdiction. It's true that whether something is a sham partnership is a partnership item, and 6226F gives the court jurisdiction to determine partnership items. Okay, so so far so good. So as to the determination that there's a sham partnership, you didn't even talk about 6233. You think that is done by 6226F? Right. In other words, to say that a partnership is a sham, that's a partnership item, and this court decided that in Petaluma too. Okay, so if you're with the line of reasoning at that point, then all that's left is the applicability of the penalty. And as to the applicability of the penalty, Woods just says, and I think it's just reading the text and it's basing it on the United States' argument in the Supreme Court, that that's 6226F too because it's related to an adjustment to a partnership item. That's all you need to know. Well, to talk about the applicability of the penalties, it was never a position that that... You're asking me now about the regulation under 6662. I'm asking you about the first issue. I can't keep the numbers straight in my mind. The first regulation is 301. The temporary regulation. Yeah. The 6233 regulation. Why does that have anything to do with jurisdiction? And if it doesn't, the argument's been waived. Well, if it doesn't, the argument has been waived. It seems to me that it is arguable that it has something to do with jurisdiction simply because 6233 is like an umbrella. It's still a statute that applies all of the TEPRA statutes in the case of a sham partnership. Do you know of any other situation in which the existence of subject matter jurisdiction for a court turns on whether an agency decides that it exists? No. So it seems like we're already in a position where we're sort of in an odd place. If we buy into the notion that the question whether a court has jurisdiction is up to the IRS to determine by regulation, then they can just turn it on and off as they want to by regulation. It seems like an odd, seems somewhat odd to me. And if it doesn't exist anywhere else, then as I understand your argument, or at least the back and forth that we're having now, you agree that 6233 doesn't have anything to do for jurisdictional purposes with a predicate determination of whether there's a sham partnership, that 6226F already does all the work on that. Well, the regulations, actually it's the regulations under 6231 that determine what is the partnership item. And the regulations under 6231 specify that certain legal and factual determinations are partnership items. And so this court, the Eighth Circuit, and I believe the Ninth Circuit, have determined that whether a partnership item is a sham partnership or not is a partnership item. So that is really done by regulation and not by statute. But it's the plain terms of the statute say that. It says 6226F says that there's jurisdiction over partnership items. Right. It says that there's jurisdiction over partnership items and the applicability of any penalty. And that language just seems to cover the jurisdictional issue here. Well, as Your Honor said, we have no objection to a holding of this court that the first regulation challenged is not a jurisdictional statute and the taxpayer waived it, or the Petaluma waived it by not raising it in one of the preceding appeals. It's also our position that the second statute is a non-jurisdictional statute and that that was waived by not having been raised in the previous appeals. If the court is on board, I mean, I'm prepared to discuss the merits of, you know, the challenge to either of these regulations if this court wishes me to do so. Or if this court is fully on board with the waiver argument, I can simply conclude my argument. Do you have any questions? Thank you. Thank you, Your Honor. Mr. Robinson. Thank you, Your Honor. I want to address what I consider to be the elephant in the living room on that last exchange, and I have a dog in that fight, the same stuff that's going on in my case. My taxpayer is never going to get to argue his reasonable policy good faith. That's why we've been doing this litigation for the last I don't know how many years. The system is set up, and I briefed this on one or more of the briefs down below, the IRS has set the system up to preclude the taxpayers from ever making that argument. The way they do it is very simple. The individual reasonable cause and good faith defense is a partner item. It's dealt with at the partner level, and when the partnership determination is complete, the IRS will do a computational assessment, a computational adjustment. They will summarily assess the penalty, no statutory notice of deficiency, no prepayment form, no tax court, no nothing. It's assessed and collected. The taxpayer has six months from the time of the computational adjustment to fully pay the 40% penalty and then bring a refund claim. They don't have the normal prepayment stuff. My guy can't afford it. He's never going to be able to challenge it. It has been suggested in other arguments that, oh, well, he can do a collection due process, right? He gets assessed and he does this collection due process under 6330. No, he can't because, once again, the commissioner has written out of the code through regulations any ability by the taxpayer to make a merits challenge to the tax. So that's why we're here, because if we can't get some kind of judicial determination, prepayment judicial determination on that penalty, we'll never get to do it. To your Honor's question, the reason I'm fumbling around here with my tax thing, the 6233 section, I think, is jurisdictional, and it's not finessed by 622F. And I think the reason is, and I can't put my fingers on it because I need a date, 6233 came into effect around 1986. It was two years after. My question is, is the version of 6226F you're looking at a 1986 version? I suggest the answer is no, but I haven't been able to pull it up. Do you think 6226F changed in some material respect? Sure, and that's what 6233 was designed to do. It allowed the commissioner to change the existing state of the law that was then sham partnerships, nonexistent partnerships, imaginary partnerships, plainly weren't covered by TEFRA. TEFRA was a very elaborate statute designed to cover real partnerships and real transactions. It was never contemplated that it would cover bogus transactions. Then how do you explain the fact that Woods was decided by the Supreme Court and there's no reference to 6233 at all? No one brought it up. And there is all kinds of reference to 6226F. Sure, that was the regulation that was in play. No one saw it. But there's a statute. The 6226F is a statute, and the Supreme Court, as I look at Woods, reads that statute to confer jurisdiction. It doesn't think that you need anything else. So the fact that 6233 comes along later and has some stuff in it, as I read Woods, the Supreme Court didn't think that that mattered. They thought you got jurisdiction already by virtue of 6226F. Yes, and then they would be correct if, in fact, 6226F were in place in the time frame we're dealing with. So you think if 6226F did not change in a material respect, then you think that 6226F doesn't? Frankly, I didn't think of that. But that would be my answer, but I can't prove it because I need to look at the historical picture. But I'd be surprised if the word sham appeared back in 1985 for 6226F. But I could be wrong. Well, I don't think sham has ever appeared, has it? The word sham? No. Well, the word sham appears when you're dealing with partnership items, and I believe when they list them in the regs, they flag that. But in terms of the statutory language, 6226F didn't before and doesn't now use the word sham. That's true. But your position is that if 6226F didn't change in any material respect, then the reading that I'm suggesting is a plausible reading. Assuming that the underlying regulations are the same as well, because I guess I should verify. If 6226F were identical at the time, it clearly didn't cover sham transactions, sham partnerships. It didn't. DEFRA did not apply to sham partnerships prior to 6233. Just didn't. And then I get back to my question. The Supreme Court authors Woods. It's a unanimous decision. 6233 just isn't even in the decision. All that's in there is 6226F. Right. So they're looking at the same words. Let's just assume that they're the same words. 6226F has the same words. Okay. The position you're taking is that if you look at those words, it just doesn't deal with sham partnerships. Correct. If you look at Woods, it does deal with sham partnerships, because they're looking at the exact same words, and they're saying there's jurisdiction to determine, A, whether this is a sham partnership, and, B, the applicability of penalties that ensue from the determination of a sham partnership. All they're looking at is the words of 6226F. Okay. And then I circle back to my original comment is nobody brought it up. And they can bring it up at any time. I don't understand how bringing it up even matters, because if you bring up another statute, 6233, I think if you read the court's decision in Woods, what they would say is, I don't even care about 6233, because I'm looking at this one provision, 6226F, which is the organic jurisdictional statute. I'm reading these words, and I'm finding that jurisdiction exists. Unless you're telling me that 6233 turns off jurisdiction, which nobody's making that argument, then we don't even care about 6233. All we care about is 6226F. You have to care about 6233, because it's the only vehicle in TEFRA that allows the courts to deal with imaginary sham non-existent partnerships. Without that, you can't do it. I understand that you're saying that. I guess all I'm saying is I don't read the Supreme Court in Woods to have thought that, because they don't even refer. Now, Woods was a sham partnership case. Yes. Right? And the holding of Woods is that there's jurisdiction. Yes. They never looked at 6233, but they thought there was jurisdiction based on 6226F in a sham partnership case. So how can it be that you have to have 6233 to get jurisdiction? Because that's what the historical evolution of TEFRA plainly shows. That's why. Without 6233, you can't do it. You cannot do what we're doing here. I guess the Supreme Court seemed to think otherwise in Woods, unless somebody... They didn't know. They missed that one. They caught the divide by zero, but they didn't catch that one. That's not surprising. This is tricky stuff. Well, and the government, I think also importantly, the government never relied on 6233 in its breach to the Supreme Court. It never suggested that 6233 was relevant to jurisdiction in a sham partnership case. It said all the work was being done by 6226F. Assuming that 6233, which is the enabling statute that allows TEFRA to deal with sham partnerships and imaginary partnerships and so forth, that triggers the ability of 6226F to deal with it. In the absence of 6233, you couldn't do it. So then, under your view, the agency could decide that there isn't jurisdiction to deal with sham partnerships. Today, sure. Just by issuing a regulation that says that there's no longer any jurisdiction to do that, even though there hasn't. Currently, there is jurisdiction to deal with sham partnerships, and there's regulations on it. Right. So under your reading of it, the agency tomorrow could adopt a regulation that says, yeah, we've had jurisdiction, we've allowed for jurisdiction over sham partnerships via regulation, but now we're turning that switch off. There's no longer any jurisdiction to deal with sham partnerships. I think Congress commands under 6233 to provide regulation. No, it says subject to regulation. And I think the government agrees with this, that if you think that 6233 is germane to jurisdiction, then it's a jurisdictional switch that can be turned on and off by the IRS. They can turn it on if they want to. They can turn it off if they want to. Well, yes, but I don't think they've ever ignored a command like that. There's no command. It says, well, it's quite clear Congress wants them to do regulations. But those regulations can point in any direction. Sure. So the regulation could say there's no jurisdiction. In specific areas, it could say that, sure. I don't think they can just blatantly. It would be very unpolitic for them to blatantly say, ah, we're not going to do it. Congress would say, they don't do that. They will try to do what they can do to bring the sham partnerships under the TEFRA umbrella. And it's kind of a difficult thing to do because it's not designed for sham partnerships. But, you know, they plug them in here and there. Anyway, where was I? That 6233, if you're correct, and there's no argument there for me, but it seems pretty clear to me that that is a condition preceding to our case here. And it's also, when you look at 6233, it also seems clear to me that it's what used to be called a legislative regulation. But it's not an interpretive regulation. It's a legislative regulation, which prior to Mayo was sort of a higher level regulation. And here it requires additional acts by the IRS under the APA, which they didn't do. And that's pretty clearly set out. And it just seems to me that it's always interesting to me that when the IRS doesn't follow the law, it's like, oh, well, who cares? What difference does it make? Why are we talking about this? If it were a taxpayer making arguments like that, they would be crucified. Why doesn't the IRS have to follow the law? They didn't. Their regulation is no good. Temporary regulation is no good. It sat around for 14 years before they finally finalized it. And that is the regulation that enables TEFRA to apply to sham partnerships, non-existent partnerships, imaginary partnerships. And so this is my point. I realize that there's not a single case I can find where the courts have torpedoed a tax statute for failure to comply with the APA, although they've certainly said bad things about that kind of behavior. But I just make the point that why shouldn't they be required? They didn't do it. So the reg's no good. The temporary reg's no good. And we're out of it completely under TEFRA. I think the more fun argument, which is the clever argument, and I didn't think it up. Professor Brewer, who's in the audience, thought it up, is the divide by zero argument on the 400%. The code states a formula that simply does not apply to a zero value. How do you overcome the government's waiver argument there? You acknowledge and you agree this is the first time you've brought that up. Yes, I agree this is the first time. My response to that is it's jurisdictional. Let me explain that, please. The IRS has no jurisdiction to impose a 40% penalty without that section in 622-6222. I'm sorry. Whatever the code section is. The 40% penalty section. Without that, they can't do it. They couldn't just pop up and start imposing a 40% penalty. They need that statute 6662. They need that statute to do it. Without a statute, they have no jurisdiction to do it. Period. They put this statute in, 40% penalty, and it does not cover a zero situation. There's no jurisdiction for them to have a 40% penalty with a zero value asset, if you will. So if they had an asset of $1, though, it kicks in? Doesn't that seem sort of gamesmanship, like an absurd argument? The code is replete with outcomes, it seems silly. But they're there to be followed. That doesn't shock me one bit. But we do have canons of interpretation that talk about absurd results and things like that. It's not absurd. It's true. The absurd result was. . . It's not absurd that if you had somebody who had claimed a $25 million value, and it turned out that it was worth $1 as opposed to zero, that those two would be treated differently? That's not an absurd result? No, not an absurd result to me because it's true. In fact, the government obviously knew they had a little problem here because they tried to backstop it with a regulation. They said, oh, well, if it's zero, we'll consider it to be 400%. That was their response to that. So they thought it was a problem. They didn't think it was ridiculous. They tried to cover it up. Well, that doesn't work. Why doesn't it work? Because it's not true. You can't have a situation where something is not true in the statute and try to make it true with a regulation. For example, suppose there was a statute that regulated chickens, and they decided they wanted to use it to regulate automobiles. They couldn't say an automobile would be considered a chicken because it's not. And similarly here, they can't say that a zero value will be considered 400% of something because it's not. All right, Mr. Robbins, we have your argument. Thank you. Okay. Does Ms. Oppenheimer have any time left? The regulation under 6662 is not a jurisdictional regulation. It doesn't go to jurisdiction. When we refer to a jurisdictional statute, we mean something going to the power of the court, not the power of the IRS. So Petaluma incorrectly characterizes Section 6662 as a jurisdictional statute. It doesn't go to the power of the court to decide a case. It simply goes to the right of the IRS to impose the penalty. Since 6662 is not a jurisdictional statute, the regulations under it have nothing to do with jurisdiction. And we go back to our original argument that Petaluma waived any challenge to the regulation by failing to rely on it, by failing to challenge the validity of the regulation in either of its two prior appeals. Will you address the merits of the argument nonetheless? Yes, I will. The merits of the argument. The regulation under Chevron, the regulation is entitled to Chevron deference if it's a reasonable interpretation of statute. And I guess I would say that perhaps the situation of a zero, you know, a zero basis is a gap in the statute that under Chevron Treasury was authorized to fill by regulation. And it did fill it by saying that if there's a situation where an adjusted basis or value is zero, it shall be considered to be a substantial gross valuation misstatement penalty within the meaning of the regulation. And I think this regulation is consistent with the congressional intent to penalize those overstatements that are greater in amount. In other words, there are three possible scenarios, a situation where, well, there's two or maybe more possible situations. The statute penalizes, imposes a 20 percent penalty where there's an overstated basis of 200 percent. It applies the gross valuation misstatement penalty where there's an overvaluation of 400 percent. So are we to assume that in the situation of a zero basis, Congress intended there to be no gross overvaluation penalty at all? I think that's not consistent with what the statute said. And the Second Circuit, in the case of Gilman v. Commissioner, said the application of penalty in a sham transaction situation is consistent with the congressional objective of lessening tax shelter abuse. In this situation, the overstated basis amounted to $25 million. If the basis stated on the return was one, you would have had an overstated basis of 25 million percent. So I think the facts of this case illustrate the reasonableness of the Commissioner's interpretation. As this Court said in the case of Lee's summit, there is no perfect solution to the problem of multiplying by zero. Likewise, there's no perfect solution to the problem of dividing by zero. I urge this Court to conclude that the interpretation of Treasury was a reasonable interpretation, and that the regulation is entitled to Chevron deference. Thank you.
judges: Henderson, Griffith, Srinivasan